# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **MICHAEL LOMBARDELLI**<br>2271 Eaton Lake Court<br>Lehigh Acres, FL 33973<br><br>**Plaintiff,**<br><br>v.<br><br>**FLYING ACE CARWASH, LLC**<br>5570 Merily Way<br>Huber Heights, OH 45425<br><br>**Defendant.** | :<br>:<br>: **CASE NO.: 3:22-cv-156**<br>:<br>:<br>: **JUDGE:**<br>:<br>:<br>:<br>: **Jury Demand Enclosed Herein**<br>:<br>:<br>:<br>: |

## COMPLAINT

NOW COMES Plaintiff Michael Lombardelli ("Plaintiff") and proffers this Complaint for damages against Defendant Flying Ace Carwash, LLC ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (together, "the ADA"), Age Discrimination Employment Act ("ADEA"), and O.R.C. Chapter § 4112, *et seq.* ("Chapter 4112").

2. This Court has jurisdiction over Plaintiff's claims under the ADA and ADEA, as Plaintiff has exhausted all administrative remedies and received a Right to Sue Letter on or about April 12, 2022. (See attached hereto as Exhibit A).

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio and performed his job duties there and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Michael Lombardelli is an individual, a United States citizen, and a resident of Florida.

6. Defendant Flying Ace Carwash, LLC is an Ohio limited liability company that is registered with the State of Ohio and is doing and has done substantial business in southwest Ohio.

7. At all times relevant herein, Plaintiff was an employee of Defendant as that term is defined in the ADA, ADEA, and O.R.C. Chapter 4112.

8. At all times relevant herein, Defendant was a covered "employer" as that term is defined in the ADA, ADEA, and O.R.C. Chapter 4112.

## FACTUAL BACKGROUND

9. Plaintiff began working at Defendant as a site manager in training on February 14, 2020.

10. Defendant advised Plaintiff at the time of hire that they would immediately start providing him the necessary training and, once he completed his trainings and certifications, Defendant would place him in the first available location as a Site Manager.

11. Plaintiff received a base salary of $45,000.00, plus earns a monthly bonus of between $2,000.00 to $2,500.00.

12. Plaintiff started working at Defendant's Beavercreek, Ohio location, and he performed well in his position, completing all the required trainings and certifications.

13. Consequently, Defendant designated Plaintiff as a Site Manager in waiting, meaning that Defendant would place him as the Site Manager in the next open position. The Area Manager, Jeff Weingartner, advised Plaintiff of that on multiple occasions, as did other members of Defendant's upper-level management.

14. Plaintiff had difficulties with the Beavercreek Site Manager, Amanda Graham, because of her extremely poor management style.

15. Ms. Graham would often come to work appearing as though she had been smoking marijuana and consistently opened the store late.

16. Ms. Graham's decision to consistently open the store late especially bothered Plaintiff because it made it difficult for him to complete his required 45 hours of work each week.

17. Plaintiff advised Mr. Weingartner about these and other problems involving Ms. Graham on a number of occasions.

18. In late September 2020, Defendant transferred Plaintiff to its Huber Heights, Ohio location.

19. The Site Manager at that location was Dennis Hale, and the Assistant Site Manager was Heather Lance.

20. Plaintiff worked at that location without incident over the next several months, developing good rapport with the employees at that location.

21. In December 2020, Plaintiff had to take medical leave in order to have back surgery which consisted of bone fusion.

22. Plaintiff needed a little more than a month to recover from his back surgery.

23. Plaintiff coordinated his need for medical leave with Annette Robbins.

24. Plaintiff communicated with Ms. Robbins since she filled in as the Area Manager of the Huber Heights location while Mr. Weingartner was on medical leave during that time.

25. Plaintiff spoke to Ms. Robbins the week before he was to return to work from his medical leave on January 18, 2021.

26. Early in the call, Ms. Robbins oddly asked Plaintiff if he planned on returning back to work, rather than simply discussing his planned return to work date.

27. Plaintiff advised Ms. Robbins that he intended to return back to work, though his physician suggested that he try to sit when he could.

28. Plaintiff knew that he could easily follow the physician's suggestion given that the sites had several places in which he could periodically sit while he worked, including the stool located at the front of the store.

29. Plaintiff spoke to Ms. Lance (then-Assistant Site Manager) soon after speaking to Ms. Robbins. He informed Ms. Lance that he had recently spoken to Ms. Robbins, informing her that he told Ms. Robbins about his return-to-work date, and that he would need to sit on some occasions due to his back.

30. Ms. Lance responded by saying, "that's funny, because Annette [Robbins] just demanded that all the stools in the front of the site be removed and placed in the back of the site."

31. Ms. Lance further told him that another Assistant Manager, Shawn l/n/u, heard Mr. Hale say that they removed the stool because of Plaintiff.

32. Plaintiff returned back to work on January 18, 2021.

33. As Ms. Lance indicated, Ms. Robbins had moved the stool at the Huber Heights location to the back of the site and informed Plaintiff that he could not bring it to the front of the site to use.

34. Ms. Robbins' actions were clearly punitive given that Plaintiff was advised that stools were located in the front of the store at other site locations managed by Ms. Robbins.

35. Indeed, Plaintiff later sent a picture to you showing a Site Manager sitting on a stool at a different location.

36. Defendant took other punitive actions against Plaintiff when he returned. For instance, Defendant began closely monitoring Plaintiff on the cameras while he was working.

37. On one occasion, a Service Technician, Larry Daye, received a text message from his supervisor while he was speaking with Plaintiff of a picture of the two of them, demonstrating that they were being watched by the site's cameras. The camera feed was accessible to both Ms. Robbins and corporate management.

38. Further, Ms. Robbins informed employees at the site that she did not like Plaintiff and that he is "lazy."

39. Toward the end of January 2021, Mr. Hale indicated that he was leaving his Site Manager position.

40. In light of that news, Plaintiff assumed that Defendant would promote him to become the new Site Manager at the Huber Heights location given, among other reasons, (i) he was told on a number of occasions by upper-level management that Defendant would place him in the next open Site Manager position; (ii) he is currently working in the Huber Heights location; (iii) he had completed all the necessary trainings and certifications; and (iv) he has more than 15 years of managerial experience.

41. Consequently, Plaintiff was extremely devastated when a few days after Mr. Hale's announcement, Dan Eisenhower indicated to Plaintiff that Defendant was promoting Mitch Marks, who is 22 years old, to the Site Manager after Mr. Hale left Defendant.

42. Plaintiff was confused by Defendant's decision to promote Mr. Marks over him because, in addition to the reasons discussed, Mr. Marks had not fully completed his Site Manager training.

43. On February 4, 2021, Plaintiff sent Charlie Corbin, Human Resources Director, an email voicing his concerns about Defendant discriminating and subjecting him to a hostile work environment due to both his disability and his age. In that email, Plaintiff detailed the punitive actions Defendant had taken against him since he returned from medical leave, culminating in Defendant's decision not to provide him the Site Manager position at Huber Heights.

44. Defendant responded to Plaintiff's concerns by immediately placing him on indefinite leave.

45. After more than two weeks not hearing anything from Defendant, Plaintiff's below signed counsel sent a letter reiterating Plaintiff's concerns regarding the unlawful discrimination, harassment, and retaliation Defendant subjected Plaintiff to.

46. On February 24, 2021, Defendant informed Plaintiff that their investigation did not show any type of discrimination or violation of Plaintiff's rights, and that Defendant was moving Plaintiff out of his position at the Huber Heights location.

47. Plaintiff enjoyed working for the Huber Heights' location because he received higher bonus payments there compared to other locations given that the Huber Heights location is one of Defendant's highest volume locations.

48. On February 26, 2021, Plaintiff requested additional time off work to care for his wife after she had a serious surgery. Plaintiff was off caring for his wife for approximately 4 weeks.

49. On March 29, 2021, Plaintiff returned back to work at Defendant's Englewood, Ohio location.

50. When Plaintiff arrived, the manager, Kayla (l/n/u), immediately approached him and stated that she does not put up with "bullshit," does not do drama, and does not accept excuses. This confused Plaintiff given that he had never heard a manager make such comments.

51. A few days after Plaintiff returned, Mr. Eisenhauer asked that Plaintiff call him and, when he did, Mr. Eisenhauer referred to Plaintiff as a "shitty employee," "a piece of shit," and a thief, as well as commenting on the fact that Plaintiff retained a lawyer, saying Plaintiff was untrustworthy because he "lawyered up."

52. Management warned employees to be careful speaking to Plaintiff.

53. Plaintiff was transferred to the Miamisburg, Ohio location on April 10, 2021.

54. Plaintiff did not work April 11 or April 12.

55. On April 13, when Plaintiff reported back to work, Mark Blair followed Plaintiff around and critiqued his work the entire day and threatened to terminate him if he performed a job duty wrong.

56. That day, Mr. Blair terminated Plaintiff's employment.

**FIRST CAUSE OF ACTION**
**Disability Discrimination**
**ADA and O.R.C. § 4112, *et seq.***
**Count I**

57. All of the preceding paragraphs are realleged as if fully rewritten herein.

58. Plaintiff took medical leave in December 2020 to have back surgery which consisted of bone fusion. At all times relevant hereto, Plaintiff had a disability, a record of physical impairment, and was regarded by Defendant as having a physical impairment as defined under the ADA and O.R.C. §4112.01(A)(13).

59. As a person with a disability or regarded as disabled, Plaintiff is a member of a protected class.

60. Plaintiff was qualified for his position based on the fact that he had performed well in his position.

61. Plaintiff was subjected to harassment based upon his disability when he returned from his medical leave. For example, he communicated to Ms. Robbins his need to sit periodically due to his back, but Ms. Robbins removed the stools at the Huber Heights location so Plaintiff could not sit. However, Defendant's employees at other locations managed by Ms. Robbins were allowed to sit periodically. Another example of how Plaintiff was subjected to harassment based upon his disability includes when Ms. Robbins informed other employees that she did not like Plaintiff and that she thought he was "lazy."

62. Plaintiff suffered an adverse employment action when he was not promoted to Site Manager at the Huber Heights location upon Dennis Hale's resignation from the position. The Site Manager position would have provided Plaintiff twice the amount of monthly bonuses compared to his current position. Defendant promoted Mitch Marks for the position despite Mr. Marks not completing his Site Manager training.

63. Plaintiff further suffered an adverse employment action when he was placed on indefinite leave upon engaging in protected conduct on or about February 4, 2021.

64. Defendant allowed Plaintiff to return to work on March 29, 2021, but Plaintiff was relocated to Defendant's Englewood, Ohio location. At Defendant's Englewood, Ohio location, he was subjected to continued harassment based upon his disability.

65. The Manager of Defendant's Englewood store, Kayla (l/n/u), approached Plaintiff and stated that she does not put up with "bullshit," does not do drama, and does not accept

excuses. Plaintiff was also harassed by Dan Eisenhauer, Managing Partner, as Mr. Eisenhauer referred to Plaintiff as a "shitty employee," "piece of shit," and a thief, as well as commenting on the fact that Plaintiff retained a lawyer, telling Plaintiff to "go ahead and waste your [Plaintiff's] money on attorney's fees," and that Plaintiff was untrustworthy because he "lawyered up."

66. Defendant transferred Plaintiff to its Miamisburg, Ohio location on or about April 10, 2021.

67. On April 13, 2021, when Plaintiff reported to work, Mark Blair, Site Manager, followed Plaintiff around the entire day and threatened to terminate Plaintiff's employment if he performed a job duty wrong.

68. On April 13, 2021, Mr. Blair terminated Plaintiff's employment.

69. Defendant's harassment and adverse employment actions taken against Plaintiff are casually connected to Plaintiff's disability.

70. Plaintiff will be able to establish that any allegedly legitimate reason(s) for his failure to promote, transfer, and termination were pretexts for discrimination.

71. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

72. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

**SECOND CAUSE OF ACTION**
**Retaliation**
**ADA and O.R.C. § 4112,** *et seq.*
**Count II**

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. Plaintiff took medical leave in December 2020 to have back surgery which consisted of bone fusion. At all times relevant hereto, Plaintiff had a disability, a record of physical

impairment, and was regarded by Defendant as having a physical impairment as defined under the ADA and O.R.C. §4112.01(A)(13).

75. Plaintiff engaged in protected conduct on or about February 4, 2021, by complaining to Charlie Corbin, the Human Resources Director, about Defendant discriminating against him and subjecting him to a hostile work environment due to his disability, further detailing the punitive actions Defendant had taken against him since his return from medical leave, culminating in Defendant's decision not to provide Plaintiff the Site Manager position at Defendant's Huber Heights location.

76. Plaintiff was retaliated against for engaging in the protected conduct as Defendant immediately removed him from the schedule and placed him on indefinite leave to investigate.

77. Plaintiff's below signed counsel sent Defendant a demand letter on or about February 22, 2021, explaining how Defendant's decision to unilaterally place Plaintiff on leave violated his rights under the ADA and O.R.C. Chapter 4112 *et seq*.

78. Defendant concluded its investigation thereafter and informed Plaintiff that they did not discover any discrimination or violation of Plaintiff's rights.

79. Defendant further retaliated against Plaintiff by moving Plaintiff out of his position at the Huber Heights location and allowed him to return from leave on or about March 29, 2021.

80. Plaintiff returned from leave on March 29, 2021, and was relocated to Defendant's Englewood, Ohio location.

81. Defendant transferred Plaintiff again on or about April 10, 2021, to its Miamisburg, Ohio location.

82. Despite Plaintiff engaging in protected conduct, Plaintiff suffered an adverse employment action when Defendant terminated his employment on April 13, 2021.

83. Plaintiff will be able to establish that any allegedly legitimate reason for his termination was a pretext for discrimination.

84. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

85. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

### THIRD CAUSE OF ACTION
### Age Discrimination
### ADEA and O.R.C. § 4112, *et seq.*
### Count III

86. All of the preceding paragraphs are realleged as if fully rewritten herein.

87. Plaintiff is 57 years old. As such, Plaintiff is a member of a protected class.

88. Plaintiff was qualified for his position based on the fact that he had performed well in his position.

89. Plaintiff was discriminated against because of his age and suffered an adverse employment action based upon Defendant's decision to promote Mr. Marks for the Site Manager position at the Huber Heights location, despite Mr. Marks not completing his site manager training.

90. Plaintiff further suffered an adverse employment action when Defendant terminated his employment after Plaintiff engaged in protected conduct.

91. Plaintiff will be able to establish that any allegedly legitimate reason for his termination was a pretext for discrimination.

92. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

### FOURTH CAUSE OF ACTION

## Retaliation
## ADEA and O.R.C. § 4112, *et seq.*
## Count IV

93. All of the preceding paragraphs are realleged as if fully rewritten herein.

94. Plaintiff is a member of a protected class because he is 57 years old.

95. Plaintiff was qualified for his position based on the fact that he had performed well in his position.

96. Plaintiff engaged in protected conduct on or about February 4, 2021, by complaining to Charlie Corbin, the Human Resources Director, about Defendant discriminating against him and subjecting him to a hostile work environment due to age.

97. Plaintiff was retaliated against for engaging in the protected conduct as Defendant immediately removed him from the schedule and placed him on indefinite leave to investigate.

98. Plaintiff's below signed counsel sent Defendant a demand letter on or about February 22, 2021, explaining how Defendant's decision to unilaterally place Plaintiff on leave violated his rights under the ADEA and O.R.C. Chapter 4112 *et seq.*

99. Defendant concluded its investigation thereafter and informed Plaintiff that they did not discover any discrimination or violation of Plaintiff's rights.

100. Defendant further retaliated against Plaintiff by moving Plaintiff out of his position at the Huber Heights location and allowed him to return from leave on or about March 29, 2021.

101. Plaintiff returned from leave on March 29, 2021, and was relocated to Defendant's Englewood, Ohio location.

102. Defendant transferred Plaintiff again on or about April 10, 2021, to its Miamisburg, Ohio location.

103. Despite Plaintiff engaging in protected conduct, Plaintiff suffered an adverse employment action when Defendant terminated his employment on April 13, 2021.

104. Plaintiff will be able to establish that any allegedly legitimate reason for his termination was a pretext for discrimination.

105. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests, monetary damages including economic damages, back pay and benefits, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages, and punitive damages in an amount to be determined at trial, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
513-834-8254 (Phone)
513-834-8253 (Fax)

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)